412 So.2d 527 (1982)
STATE of Louisiana
v.
James MOSLEY.
No. 81-K-2025.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 30, 1982.
*528 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Nancy Sharpe, Asst. Dist. Attys., for plaintiff-relator.
Charles L. Elloie, New Orleans, for defendant-respondent.
DENNIS, Justice.
We granted certiorari to review the trial court's suppression of evidence obtained by police officers during the search of a residence pursuant to a search warrant. On April 15, 1981 a police officer, under oath, made the following showing of probable cause before a magistrate in applying for the search warrant:
"The reasons and facts for the request of this search warrant are: Officers Ned Gonzales, Paul Mattio, Sal Zanco, Norman McCord, and Michael Marshall assigned to the Fifth District MCI Unit received information that narcotics transactions were taking place at Leola's Disco Hot Tomale Stand, located 2320½ St. Bernard Ave. The aforementioned Officers maintained a surveillance at the Hot Tomale stand for a period of several hours on both Tuesday, April 14, 1981 and Wednesday, April 15, 1981, and observed what appeared to be many such transactions. That is, the Officers observed money being exchanged for small brown envelopes. At approximately 11:45 AM on April 15, 1981, Officer Gustave Deruise, dressed in civilian clothes, went to the service window of the tamale stand and attempted to buy a dime bag ($10.00) of marijuana, and was told by an unidentified black male, dressed in a blue shirt and blue pants, about 25 years of age, that he did not have any, but was expecting some soon. At this time, the Officers employed the same Confidential Informant who supplied the original information about the Hot tamale stand, and who has supplied information in the past which has led to the arrest and conviction of narcotics dealers. This Confidential *529 Informant went to the window of Leola's Hot Tamale Stand and inquired if he could buy a dime bag. At this time the black male previously described informed the Informant that they were out of stock, but that Carlos was on his way to acquire more. The aforementioned Officers had reason to believe that the Carlos mentioned at the tamale stand was one Carlos Dartez, NM, dob 5-05-58, residing 1321 Elysian Fields Ave. At approximately 1:35 PM Officers Gonzales, Zanco, McCord, and Mattio observed Carlos Dartez, in the company of a black female, later identified as Vivian Whitaker, dob 10-05-60, residing 1321 Elysian Fields Ave., in a vehicle, a 1977 Pontiac 2-door, maroon, La. license # 680B163, parked near the Super City Pharmacy, at the intersection of No. Broad and St. Bernard Ave. The Officers observed the black female exit the vehicle with a large brown paper bag, which she handed to the male, whom the Officers recognized as the aforementioned Carlos Dartez. The Officers observed Carlos Dartez look around the area, cautiously, then place the bag in the trunk of the vehicle. Carlos Dartez and the female went inside the drugstore then returned, then drove away in the vehicle. The aforementioned Officers followed the vehicle to Leola's Hot Tamale Stand, where the black male and female parked on the side of the stand on No. Rocheblave St. It should be noted her [sic] that Officers Sal Zanco, Michael Marshall, and Ned Gonzales had occasion to arrest Carlos Dartez on 7-18-80, for possession of marijuana, with intent to distribute, at the same location, Leola's Hot Tamale Stand. This case is currently pending, charges having been accepted by the Office of the Honorable District Attorney. The aforementioned Officers then observed Carlos Dartez and Vivian Whitaker drive away hastily. The Officers at this time believed that they had been observed and recognized by Carlos Dartez and decided to stop the suspects and vehicle, succeeding in doing so at the intersection of No. Broad and Esplanade Ave. The Officers confronted Carlos Dartez and his female companion and informed him that he was under investigation of possession of narcotics. At that time Carlos Dartez stated that he had a bag of marijuana in the trunk of his vehicle. The Officers then reminded Carlos Dartez and Vivian Whitaker of their Constitutional Rights, and Carlos Dartez agreed to sign a voluntary permission to search form for the aforementioned vehicle. The Officers, after obtaining signed permission to search the vehicle, opened the trunk and seized a brown bag containing approximately one (1) pound of marijuana, contained in various size individual bags. Carlos Dartez then informed the Officers that he wished to cooperate and would agree to sign a permission to search form for his residence, 1321 Elysian Fields Ave. Carlos Dartez related that he had approximately one (1) more pound of marijuana in his residence. The Officers then recovered another pound of marijuan [sic] from the residence at 1321 Elysian Fields. After Carlos Dartez agreed to the search of his vehicle, and the first pound of marijuana was found, the Officers placed Carlos Dartez under arrest and again informed him and Vivian Whitaker of their Constitutional Rights once more and completed Rights of Arrestee Forms # 104955 and 104956, which were signed by both suspects, waiving their Constitutional Rights. At this time Carlos Dartez advised the Officers that he was willing to cooperate even further, to give a statement, and to name his contact, whom he buys his marijuana from. The aforementioned Officers, Carlos Dartez, and Vivian Whitaker then relocated to the Fifth District Station, where Carlos Dartez gave a voluntary taped statement. In his taped statement, Carlos Dartez related that he had bought one (1) pound of marijuana and ½ gram of cocaine from a subject known as "Candy", who resides at 1608 Music St. Carlos Dartez continued that "Candy" is a black male, about 50-54 years of age, 6'6" dark complected, grey hair, well dressed, who walks with a slight limp. Dartez related that "Candy" *530 drives a white Fleet Cab, number unknown. Carlos Dartez also related that when he made the above described buy, on Monday, April 13, 1981, he observed approximately five (5) pounds of marijuana in the residence, and approximately ¼ once [sic] of Cocaine. The Investigating Officers then drove by 1608 Music St. and observed a residence just as that described by Carlos Dartez.
"Due to the aforementioned described circumstances and facts, it is respectfully requested that this petition for a warrant to search the premises at 1608 Music St. be granted."
A search warrant was issued on April 15, 1981 authorizing a search of defendant's residence at 1608 Music Street for "narcotics to wit marijuana and cocaine." Pursuant to these warrants police officers searched defendant's residence on April 15, 1981 and seized marijuana, cocaine and other items.
Defendant moved successfully to suppress the evidence in the trial court. We granted the state's application for review.
At the motion to suppress hearing, the informant, Carlos Dartez, testified that he went to the defendant's house as related in the search warrant application but that, contrary to the information he gave to the police officers, he did not buy any drugs or see any drugs on that occasion. To protect the right of privacy (not for the defendant whose privacy has already been invaded, but for law-abiding citizens in this state) is and should be of primary importance to the courts. To this end, untrue allegations of the affiant must be subject to judicial examination. State v. Melson, 284 So.2d 873 (La.1973); State v. George, 273 So.2d 34 (La.1973). Accordingly, the issue at a suppression hearing is whether the affiant was truthful, not whether the informant was truthful, because if the informant lied, but the officer reasonably believed him, it cannot be said that the officer acted without probable cause. State v. Paster, 373 So.2d 170 (La.1979); State v. Barrett, 350 So.2d 664 (La.1977). Since the evidence educed at the suppression hearing in this case does not contest the veracity of the affiant or his belief in his informant, none of the material in the warrant affidavit need be set aside in deciding whether the warrant was issued with probable cause. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
Defendant contends that the search warrant affidavit cannot pass the second prong of the Aguilar two-prong test, viz., the veracity test.[1] Under the "veracity" prong of Aguilar, facts must be brought before the judicial officer so that he may determine either (1) the inherent credibility of the informant or (2) the reliability of his information on this particular occasion. That is, the second or "veracity" prong of Aguilar may be said to have a "credibility spur" and a "reliability spur." See State v. Jeffcoat, 403 So.2d 1227 (La.1981); Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 755 (1974); 1, W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 3.3, p. 501 (1978).
The affidavit does not provide any basis for a belief in the inherent credibility of the informant under the "credibility spur." Dartez was apparently a first-time informer and therefore had no track record from which the magistrate could conclude he was a credible informant. The disclosure of an informant's identity can serve as an underlying circumstance which tends to establish that he is entitled as an ordinary law abiding citizen to the presumption of inherent credibility. See United States v. *531 Rollins, 522 F.2d 160 (2d Cir. 1975); Cundiff v. United States, 501 F.2d 188 (8th Cir. 1974); People v. Hicks, 38 N.Y.2d 90, 378 N.Y.S. 660, 341 N.E.2d 227 (1975); State v. Haron, 220 N.W.2d 829 (S.D., 1974); Woods v. State, 533 S.W.2d 16 (Tex.Cr.1976); LaFave, supra, § 3.4 n. 41. There is no possibility of that in this case, however, for the affidavit shows that Dartez is a criminal without any inherent credibility.
If the affidavit is to pass the "veracity test," it must do so under the "reliability spur" by providing a reason to believe that Dartez' information was reliable on this particular occasion despite his lack of inherent credibility. The state argues that the magistrate was justified in finding Dartez' information reliable because it was a declaration against his penal interest.
Although admissions of crime do not always lend credibility to contemporaneous or later accusations of another, they may sometimes be relied upon as a means of showing that an informer's information is reliable. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); State v. Mena, 344 So.2d 357 (La. 1976); Moylan, supra, at 762. The admission-against-penal-interest concept should not be used in a casual or blunderbuss fashion. Established Fourth Amendment doctrine would be turned on its head if criminals are thereby deemed more credible than disinterested "citizen informers." The significance of each admission in the context of the particular case must be assessed carefully and preferably upon a full disclosure by the police of all relevant circumstances. LaFave, supra, at 525; See United States v. Martin, 615 F.2d 318 (5th Cir. 1980).
Strictly speaking, because the informer, Dartez, was caught redhanded and revealed his illicit drugs to the police before naming his supplier, Dartez' tip was not a statement against his penal interest but an obvious attempt to curry favor with the police. Compare United States v. Martin, supra. The circumstances here are different from a case in which the police did not have an air-tight case against the informant before he provided the information at issue. See People v. Wolzer, 41 A.D.2d 679, 340 N.Y. S.2d 953 (1973); LaFave, supra, at 529. Dartez told the police he had a bag of marijuana in the trunk of his car immediately upon being stopped and informed he was under narcotics investigation. After removal of the bag from his car, Dartez further told the officers he had more marijuana in his residence and consented to its search. Dartez eliminated any possibility that his possession of the drugs was innocent before informing on the defendant; his tip, which might have provided crucial evidence of his guilty knowledge under different circumstances, added little to the evidence against him.
Nevertheless, Dartez' statements to the police that he had marijuana in his car and residence were self-incriminating and in the context of this particular case and its relevant circumstances lend credibility to his immediately subsequent tip involving the defendant. We reach this conclusion on the basis of several factors, considered collectively. First, Dartez' tip was almost contemporaneous with his own admissions, which themselves were given immediately, without interrogation and perhaps spontaneously. See Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); United States v. Rosselli, 506 F.2d 627 (7th Cir. 1974). There was little time or opportunity for Dartez to fabricate a story. Second, Dartez' tip focussed on a specific individual and included his address, personal characteristics and a description of his taxicab. LaFave, supra, p. 529. If Dartez had given the police several names or vague descriptions it would have been more likely that he was relying on rumor and concealing his actual source. Third, an incentive for Dartez to produce accurately was his probable realization that any discrepancies in his story might go hard with him. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (Clark, J., et al., dissenting); Commonwealth v. Norris, 6 Mass.App. 761, 383 N.E.2d 534 (1978); State v. Wielgus, 278 N.W.2d 805 (S.D.1979); LaFave, supra, at 3.3 n. 124. We are inclined to discount this factor, however, because to Dartez the *532 risks incurred in fabricating the basis of his information may have seemed small, difficult to distinguish from a genuine effort to cooperate and worth the chance of having the charges against him dropped. Fourth, "the residual risk and opprobrium of having admitted criminal conduct" see United States v. Harris, supra, 403 U.S. at 584, 91 S.Ct. at 2082, is correspondingly greater where the informant is identified by name and address as in this case. State v. Welsh, 371 So.2d 1314 (La.1979); Merrick v. State, 283 Md. 1, 389 A.2d 328 (1978).
Considering all of the relevant circumstances, we conclude that the issuing magistrate had a reasonable basis for finding the informant's information reliable on this particular occasion, for finding an adequate basis to assure that the informant obtained his information by personal observation, and ultimately for determining that there was probable cause to issue the search warrant. Accordingly, the trial court's ruling suppressing the evidence is reversed and the case is remanded for further proceedings.
SUPPRESSION OF EVIDENCE REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.
MARCUS, J., concurs in the result.
LEMMON, J., concurs.
NOTES
[1] The affidavit clearly passes the first prong of the Aguilar test, the "basis of knowledge" test. The magistrate was informed of the underlying circumstances from which the informant concluded that illicit drugs were located in defendant's residence at 1608 Music Street. He claimed to have seen five pounds of marijuana and one-quarter ounce of cocaine in the residence when he bought drugs from the defendant there on April 13, 1981. This provided an adequate basis to assure that the informant, if he is inherently credible or there is reason to believe in his information on this occasion, obtained the information by personal observation and not through mere rumor. See State v. Jeffcoat, supra.