829 So.2d 1027 (2002)
STATE of Louisiana
v.
Samuel T. HILLS.
No. 2001-K-0723.
Supreme Court of Louisiana.
November 8, 2002.
*1028 Richard P. Ieyoub, Attorney General, Harry F. connick, District Attorney, Scott D. Peebles, for Applicant.
William R. Campbell, Jr., New Orleans, Yvonne Chalker, for Respondent.
PER CURIAM.
In Williamson v. United States, 512 U.S. 594, 599-600, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994), the Supreme Court observed that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." A statement made by an individual caught redhanded in possession of contraband narcotics, acknowledging possession of the drugs but also identifying his or her supplier, therefore does not possess intrinsic reliability simply because the declarant provides the information in the context of admitting damning facts already known to the police. United States v. Hall, 113 F.3d 157, 159 (9th Cir.1997)("[The informant's] claim that `Ron' was his supplier was more in the nature of trying to buy his way out of trouble by giving the police someone `up the chain,' than a self-inculpatory statement.... Once a person believes that the police have sufficient evidence to convict him, his statement that another person is more important to his criminal enterprise than he gains little credibility from its inculpatory aspect.").
Nevertheless, particularized circumstances may render the statement reliable. We found those circumstances present in State v. Mosley, 412 So.2d 527, 531-32 (La.1982), in part because the defendant named his marijuana supplier immediately and voluntarily, "perhaps spontaneously," after his own arrest, with little time or opportunity to fabricate a story, and in part because the defendant identified a specific individual, including his address and personal characteristics, as opposed to giving the police "several names or vague descriptions [making it] more likely that he was relying on rumor and concealing his actual source." In the present case, on far different facts, we also find that the circumstances under which respondent was identified as a supplier of cocaine vouched for the reliability of the information provided by the declarant and that the court of appeal erred in concluding otherwise when it set aside the trial court's denial of respondent's motion to suppress.
On June 8, 1996, Sergeant Steven Gaudet, acting on a tip from a confidential informant that "James" was dealing cocaine in front of an abandoned house in the 2100 block of LaSalle Street in New Orleans, established a surveillance of that location with Officers Lampard and Schnapp. The officers observed a hand-to-hand *1029 transaction between two men standing not in front of the abandoned home but across the street on the sidewalk in front of the gate to a chain link fence marking the perimeter of a two-story, wood-framed building on the corner of LaSalle Street and Jackson Avenue. The officers immediately placed the two men, James Scott and Howard Bryant, under arrest. Bryant had a single bag of cocaine in his possession; Scott had a total of 19 bags of cocaine on his person. According to the police testimony at the hearing conducted on respondent's motion to suppress the evidence, while Officer Lampard was in the process of handcuffing Scott and advising him of his rights, Scott informed the officers that he did not want to go to jail and that the cocaine he had in his possession had been given to him by a Samuel Hills to sell. Scott told the officers that Hills was wearing a white baseball cap, a blue and white striped shirt and blue shorts. Scott also began motioning behind him with his head to the apartment above him, indicating that Hills resided there, and advised the officers that his supplier had more cocaine stashed on the premises. Sergeant Gaudet looked up and observed respondent, who fit Scott's description, duck his head out of the doorway to the second story apartment on at least three occasions, "as if he were monitoring our activities." Gaudet testified that he did not know either Scott or Bryant but it appeared to the officer that, "given [his] position," Scott was telling him the truth.
Shortly thereafter, the officers saw two young males exit the apartment and enter a black Nissan Sentra parked on the street. A woman also left the apartment, sat briefly in the Nissan occupied by her two sons, and then returned upstairs. Moments later, the officers observed respondent, in the company of the woman, at the head of the winding iron stair case which connected the second-story apartment to the ground. It appeared to the officers that respondent was attempting to leave, and Gaudet and Lampard stopped him and his female companion on the stairs, advised respondent that he was under investigation for a possible narcotics violation, and read him his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officers then returned respondent and his female companion to the apartment where they confined them in the kitchen while they performed a protective sweep of the premises. In the meantime, Officer Schnapp retrieved the two boys from the Nissan and handcuffed them to the fence outside the apartment. He then brought the boys back up to the apartment to rejoin respondent and their mother in the kitchen. According to Officer Schnapp, respondent stated that he did not want his family to go to jail and directed the officer to a plastic bag containing 25 smaller bags of cocaine hidden underneath the stairway outside. Sergeant Gaudet subsequently prepared an application for a search warrant and returned with a drug-sniffing dog. He discovered two small bags of cocaine and a small bag of marijuana in an ice bucket on top of the refrigerator in the kitchen and $8500 in cash hidden behind a stereo.
The state charged respondent by bill of information with possession of cocaine with intent to distribute in violation of La.R.S. 40:967(A)(1). After the trial court denied respondent's motion to suppress the evidence, a jury found him guilty of simple possession of cocaine. La.R.S. 40:967(C)(2). The court sentenced him as an habitual offender to 20 years imprisonment at hard labor without benefit of probation or suspension of sentence. On appeal, the Fourth Circuit reversed respondent's conviction and sentence. State v. Hills, 00-0124 (La.App. 4th Cir.2/14/01), 786 So.2d 983 (Byrnes, J., dissenting). The majority on the panel concluded that the officers had effectively *1030 arrested respondent without probable cause when they confined him and the other members of his family in the kitchen area of the apartment while they made a protective sweep of the premises and then waited for a search warrant to conduct a more thorough search. "Considering the totality of the circumstances," the majority observed, "we find that it cannot be said that James Scott's statement, together with the observation of actions by the defendant and members of his household, furnished police probable cause to believe that the defendant had committed a crime." Hills, 00-0124 at 19, 786 So.2d 983. The majority further found that the illegal arrest tainted the subsequent discovery of the 25 bags of cocaine in the stairway outside of the apartment and the results of the subsequent search of the premises conducted under the warrant. Id., 00-0124 at 20, 786 So.2d 983. In dissent, Chief Judge Byrnes argued that "the police had reason to believe that Hills was part of the illegal drug trafficking taking place ... and they had probable cause to detain and arrest Hills." Hills, 00-0124 at 5, 786 So.2d 983 (Byrnes, C.J., dissenting).
We agree with the premise of the majority on the court of appeal panel that even spontaneous statements not made as the result of police interrogation may be suppressed as the fruit of an illegal arrest or seizure if they are not sufficiently attenuated from the primary illegality to represent the exercise of free will. State v. Fisher, 97-1133, pp. 11-12 (La.9/9/98), 720 So.2d 1179, 1185-86. We also assume for present purposes that by seizing respondent on the steps of the staircase outside of his apartment, informing him that he was the target of a narcotics investigation, advising him of his Miranda rights, returning him to the apartment and holding him in custody while their investigation proceeded, the police had exercised the degree of restraint ordinarily associated with a formal arrest, although a formal arrest had not yet been made. Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994).
Nevertheless, we also agree with the dissent that probable cause existed for the de facto arrest of respondent. That a statement made by an individual in James Scott's position, naming others involved in an offense, is not truly self-inculpatory and therefore not intrinsically reliable, does not mean "that one who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleyways." 2 Warren R. LaFave, Search and Seizure, § 3.3(c), p. 129 (3rd ed.1996). Accordingly, "where the circumstances fairly suggest that the informant well knew that any discrepancies in his story might go hard with him, that is reason for finding the information reliable." Id. (internal quotation marks and footnote omitted) We acknowledged that factor in Mosley but were inclined to discount it, in favor of other more persuasive circumstances, because the informant may have calculated that the "risk incurred in fabricating the basis of his information may have seemed small, difficult to distinguish from a genuine effort to cooperate and worth the chance of having the charges against him dropped." Mosley, 412 So.2d at 531-32.
However, in the present case, the circumstances of his arrest gave Scott absolutely no incentive to lie about the source of his cocaine to feign cooperation with the police in an attempt to improve his position. He had just been arrested for possession of 19 bags of cocaine, knew that he faced serious felony charges, and named and described a source who was not only literally feet away from him but who was also monitoring the course of the investigation from the doorway of the upstairs *1031 apartment. Scott was presumably as aware of respondent's presence as the officers and could reasonably assume that the police would react to his information in exactly the manner that they did, by attempting to verify or discount it immediately on the scene. Scott had little or no time to fabricate a story falsely implicating someone else and he spoke spontaneously in the hope, however misguided, that he could help out his own case by trading off information expanding the scope of the police investigation "up the chain" of street-level drug trafficking. Sergeant Gaudet therefore had a substantial basis for taking Scott at his word when he gestured with his head and named his supplier. See United States v. Moore, 790 F.2d 13, 15 (1st Cir.1986)(post-arrest statement by cocaine trafficker in front of an apartment building where he had made his deals with an undercover agent that his supplier, "Yvette," was in apartment 15 in the building "was sufficient to support the agents' belief that [the dealer's] supplier and other evidence would be found in apartment 15.").
Sergeant Gaudet also had a reasonable basis for assuming that he faced a now-or-never situation precipitated by respondent's apparent attempt to leave the apartment with his family. See Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973) ("Where there are exigent circumstances in which police action literally must be `now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.") (footnote and citations omitted). For all the officers knew, respondent realized that Scott might volunteer information to save himself and was taking steps to remove or destroy the rest of his cocaine "stash." The officers therefore possessed exigent circumstances to stop respondent and his female companion on the stairway and return them to the apartment to conduct a protective sweep of the premises, thereby preventing the loss or destruction of any evidence, and to wait for a warrant before conducting a more thorough search. See Moore, 790 F.2d at 16 ("Because the sale and the arrests took place immediately outside the apartment [building], the agents could reasonably believe that the failure of [the dealer] to return to the apartment promptly with the money could create a substantial risk that appellant would flee or destroy evidence. Under these exigent circumstances, the agents were justified in entering appellant's apartment without a warrant."); see also United States v. Edwards, 602 F.2d 458, 468 (1st Cir.1979)("[T]he possibility that evidence will be destroyed by defendants who have discovered government surveillance of their activities often has been recognized as a sufficient exigency to justify warrantless entry.")(collecting cases). Respondent's spontaneous statements made as the officers waited for the warrant were therefore not tainted by any prior illegal conduct of the police.
The trial court therefore reached the correct result when it denied respondent's motion to suppress the evidence. To this extent, we reverse the decision in the court of appeal. However, in all other respects, the court of appeal adequately treated respondent's remaining assignments of error. We therefore affirm those portions of the court of appeal's opinion, reinstate respondent's conviction and sentence, and remand this case to the district court for execution of sentence.
DECISION OF THE COURT OF APPEAL AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.
JOHNSON, J., dissents.
CALOGERO, C.J., dissents and assigns reasons.
*1032 CALOGERO, Chief Justice, dissents and assigns the following reasons:
As the majority panel of the court of appeal noted, the crux of this case is whether James Scott's statement, coupled with respondent's observing the street activities from his door step, provided the officers probable cause to believe that respondent had indeed committed the crime of possession of drugs with intent to distribute. I conclude that the officers did not have probable cause, and, consequently, the de facto arrest of respondent was unlawful.
A confidential informant may provide adequate information to establish probable cause for a warrantless arrest if the state proves that the informant was credible and the information reliable. Illinois v. Gates, 462 U.S. 213, 229-30, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Rudolph, 369 So.2d 1320, 1325 (La.1979). In the present case, not only did the state fail to show that Scott was credible and reliable, but it also failed to demonstrate that the officers had knowledge of particular facts sufficient to reasonably suspect respondent of drug activity. I agree with the majority's determination that an arrestee's statement admitting possession of drugs, but implicating someone else, is generally unreliable. I do not, however, agree with the further conclusion that there existed in this case particularized circumstances rendering Scott's statement reliable. This case is simply not akin to State v. Mosley, 412 So.2d 527 (La.1982), relied upon by the majority, wherein the surrounding circumstances rendered reliable the statement given by an informant after his own arrest.
In Mosley, the tipster was known to the arresting officers. The officers in the instant case, however, admitted they knew nothing about Scott or his reliability. The fact that Scott was being arrested for a crime and may have been attempting to "curry favor" with the police tends to negate his reliability. United States v. Jackson, 818 F.2d 345, 349 (5th Cir.1987). Further, Scott's tip lacked specific information and predictive value, such as when he last obtained drugs from respondent or the amount and location of the drugs in respondent's home. Instead, Scott simply motioned to respondent's apartment and gave the officers respondent's name and what he happened to be wearing that dayinformation available to any casual observer. The informant in Mosley, on the other hand, gave a detailed taped statement, which contained the exact time, place, and amount of his last purchase of drugs from the defendant's home.
The officers testified that they did not observe behavior on the part of respondent consistent with drug trafficking: they did not see anyone approach respondent, nor did they see any hand-to-hand transactions. The officers merely noticed respondent looking outside of his door several times. Equivocal conduct does not furnish probable cause to arrest if the possibility of criminal conduct is no greater than the possibility of innocent behavior. State v. Talbert, 449 So.2d 446, 447 (La.1984). As the court of appeal found, "it is not uncommon for law-abiding residents to watch police activities occurring near their homes or apartments." Hills, 00-0124 at 19, 786 So.2d 983.
Because the officers relied on information given them by an unverified informant and also derived from a short-lived surveillance that failed to reveal any unambiguous facts and circumstances indicating that respondent was engaging in criminal activity, the officers lacked probable cause to make a warrantless arrest. Accordingly, the court of appeal correctly held that the trial court erred by failing to suppress the cocaine seized from underneath *1033 respondent's stairway and inside his apartment.