902 So.2d 473 (2005)
STATE of Louisiana
v.
James CAMBRE.
No. 04-KA-1317.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*476 John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney LaPlace, Louisiana, for Plaintiff/Appellee.
C. Gary Wainwright, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and MARION F. EDWARDS.
JAMES L. CANNELLA, Judge.
The Defendant, James Cambre, appeals from his guilty plea convictions for possession with intent to distribute marijuana and possession of more than 200 and less than 400 grams of cocaine and his sentence to 25 years imprisonment at hard labor. For the reasons which follow, we affirm the convictions, vacate the sentence and remand.
The District Attorney for St. John the Baptist Parish filed a bill of information charging the Defendant with possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)-(I) and possession of 200 grams or more but less than 400 hundred grams of cocaine, a violation of La. R.S. 40:967(C); 40:967(F)(1)(b). The Defendant pled not guilty at arraignment.
The Defendant initially filed a motion to suppress on May 5, 2000. He thereafter withdrew that motion, pled guilty and was sentenced. However, on June 13, 2002, the Defendant filed a "MOTION FOR RECONSIDERATION OF SENTENCE" in which he urged the trial court to reconsider his sentence because he was not sentenced in accordance with the plea agreement with the State. According to the minute entry of March 12, 2003, the trial court granted a defense motion to withdraw the guilty plea, then set a hearing date for motions, and set the matter for trial.
The Defendant again filed motions to suppress the evidence, as well as a motion for a preliminary examination.[1] These motions were heard on March 3, 2004 and the trial court left the matter open for memoranda. The trial court subsequently denied the motion to suppress in part, but left the matter open for the Defendant to present additional witnesses. On May 5, 2004, additional witnesses were called and, at the conclusion of the hearing, the trial judge denied the motion to suppress in full.[2]
At the suppression hearing on March 3, 2004, Lieutenant Octavio Gonzalez of the Narcotics Division for the St. John the Baptist Parish Sheriff's Office testified that, on January 1, 2000, at approximately 1:07 a.m., he received a call from Deputy *477 William Jordan[3] of the St. James Parish Sheriff's Office that the Defendant had been arrested in St. James Parish for delivering two pounds of marijuana. Lieutenant Gonzalez also testified that Deputy Jordan did not discuss any details leading up to the Defendant's arrest, except that the Defendant had said he was going to stop at his house in Garyville to pick up the narcotics in question.
Pursuant to that information, Lieutenant Gonzalez and Sergeant Troy Cassioppi, another officer with the St. John the Baptist Parish Sheriff's Office, obtained the address of the Defendant through the 911 call center. The officers went to that address, 453 Little Emily Street in Garyville, Louisiana, and knocked on the door. The Defendant's mother answered the door and Lieutenant Gonzalez asked if the officers could come inside and talk to her about the situation that had occurred just hours before. Mrs. Cambre invited the officers inside where they were soon joined by the Defendant's father. Lieutenant Gonzalez testified that he sat down with Mr. and Mrs. Cambre and explained to them the circumstances of the arrest of their son. Lieutenant Gonzalez then had a conversation with them regarding their son's financial contributions to the household. Specifically Lieutenant Gonzalez asked them whether their son paid rent and whether he lived there.
According to Lieutenant Gonzalez, Mr. & Mrs. Cambre related that their son was working, but that the household's food was "about the only thing he contributed to." Lieutenant Gonzalez presented Mr. and Mrs. Cambre with a consent to search form, which was read to them "verbatim." Lieutenant Gonzalez testified that he told Mr. & Mrs. Cambre he was looking for any illegal substance in the residence or in their son's bedroom. Lieutenant Gonzalez further testified that they both understood the form and both of them signed it at 4:09 a.m.
After Mr. and Mrs. Cambre signed the form, Lieutenant Gonzalez asked them to escort him to the Defendant's bedroom, and they did so. Lieutenant Gonzalez testified that the door to the bedroom was not locked, the bedroom was in the middle of the house, and the Defendant's mother had full access to the bedroom. As they entered the bedroom, he noticed a strong odor of marijuana coming from inside the room. Lieutenant Gonzalez observed a large, blue duffel bag on the floor, and the marijuana odor became stronger as Lieutenant Gonzalez neared the bag. While still in the presence of Mr. and Mrs. Cambre, Lieutenant Gonzalez put the duffle bag on top of the bed. Upon opening it, Lieutenant Gonzalez discovered that it contained two large plastic garbage bags. Each plastic bag contained ten pounds of marijuana. Further inspection into one of the bags revealed a brown paper bag that contained a plastic bag, which contained a Ziploc bag holding 271 grams of powder cocaine. Lieutenant Gonzalez said that he also found a triple beam scale inside of the Defendant's room. The Defendant was arrested pursuant to an arrest warrant on January 4, 2000.
Following submission of memoranda, the trial court denied the motion to suppress with written reasons as to the issue of his parents' consent to search his room, but left the matter open for the Defendant to present additional witnesses regarding the initial stop and regarding the circumstances relating to the manner in which the police obtained the information leading to the discovery of the contraband. On *478 the next hearing date, May 5, 2004, Deputy Jordan, Deputy Brett Forsythe, who was also with the St. James Parish Sheriff's Office, and Lieutenant Detillier of the Gramercy Police Department were called by the defense to testify.
Lieutenant Detillier testified that Gramercy police officers had arrested three individuals on narcotics violations involving marijuana in December of 1999. The arrestees told the Gramercy officers that they had obtained their marijuana from Trent Gardner (Gardner). Because Gardner was located outside of the jurisdiction of the Gramercy Police Department, Lieutenant Detillier contacted Deputy Jordan. On December 31, 1999, Lieutenant Detillier, Deputy Jordan and Deputy Forsythe went to Gardner's home on Grand Point in Paulina.
Deputy Jordan testified that he knocked at the door, stated the reason the police were there, and asked permission to search the house. Deputy Jordan testified that, after written consent was provided to search the house, the officers found some marijuana.[4] Gardner told the officers where he had obtained the marijuana and agreed to page the Defendant to arrange a drug deal. Deputy Jordan testified that Gardner supplied a pager number and that the officers dialed the number from Gardner's residential telephone. When the return phone call came, Gardner answered the phone. Deputy Jordan testified that he overheard Gardner's half of the conversation, but did not listen to the entire phone call. Deputy Jordan testified that Gardner asked for two pounds of marijuana and arranged for the Defendant to meet him at the Winn-Dixie in Gramercy. According to Deputy Jordan, Gardner said that anything more than two pounds would possibly be suspicious. Gardner said that the Defendant told Gardner that he was in Kenner at the time and needed to stop by his house to pick up the marijuana.
Lieutenant Detillier and Deputy Forsythe testified that they were in the house when Gardner made the phone call. While Lieutenant Detillier testified that he heard Gardner make the call, Deputy Forsythe testified that he was collecting evidence and could not recall whether he was in the room when the call was made. After leaving the Gardner residence, Deputy Forsythe parked at a salvage yard awaiting further instructions.
Deputy Jordan testified that Gardner identified the Defendant when he pulled up in the Winn-Dixie parking lot. Deputy Jordan testified that they "stopped" the Defendant. Deputy Jordan approached the vehicle and the Defendant identified himself as James Cambre. Further, Deputy Jordan testified that he saw two pounds of marijuana in plain view on the passenger's side floorboard.[5] Deputy Jordan testified that although it was night, the area where the Defendant's vehicle was parked was well lit. Deputy Forsythe corroborated the account of the events in the parking lot.
*479 Deputy Jordan said he knew Gardner from the area and Lieutenant Detillier testified that he had arrested Gardner before. However, neither officer had used Gardner as an informant before. Deputies Jordan and Forsythe testified that Gardner was not under arrest when he made the phone call from his home. Additionally, Deputy Forsythe testified that Gardner was not arrested that night, but received a summons at his home.
Following the close of testimony, the trial court denied the motion to suppress with the following reasons:
THE COURT:
All right. The Court had left this matter open to get further information, which was obtained today, as to how the initial stop came about. I was also concerned as to how the information that lead [sic] to Mr. Cambre's parents' home came about, and that was also brought out today. So, therefore, the Court at this time finds that all evidence was Constitutionally obtained, and the motion to suppress is denied in full at this time.
Following this ruling, on August 24, 2004, the Defendant withdrew his former plea of not guilty and again pled guilty as charged after being advised of his constitutional rights, and upon reserving his rights under State v. Crosby, 338 So.2d 584 (La.1976) to appeal the denial of his motion to suppress. The trial judge sentenced the Defendant to twenty-five years at hard labor.[6] This timely appeal follows.[7]
Although presented in three assignments of error, the Defendant's argument on appeal is that the trial court erred in denying his motion to suppress the evidence seized from his room at his parents' home. He argues that the warrantless seizure of evidence resulted from the exploitation of his illegal arrest and, therefore, the evidence should have been suppressed. The Defendant argues that the arrest of the subjects from the park was invalid, thus the search of Gardner's home was invalid and since Gardner led the officers to him, his warrantless arrest was invalid. Further, he argues that the information from Gardner, without proof of his veracity and reliability, was not sufficient to provide probable cause for his arrest. Finally, he argues that the state did not meet its burden of proving that his parents' consent to search was freely and voluntarily given and that it covered the search of the duffel bag in his room.
The State does not address the validity of the Defendant's arrest in St. James Parish. Rather, the State contends that the St. John the Baptist Parish authorities acted properly upon information furnished to them by the St. James Parish authorities and that the evidence was subsequently recovered by a valid consent search.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999); State v. Owen, 453 So.2d 1202 (La.1984); State v. Stone, 94-155 (La.App. 5th Cir 7/26/94), 641 So.2d 652. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Owen, supra. *480 When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was given freely and voluntarily. State v. Owen, supra; State v. Stone, supra. In addition, if the consent was obtained after an illegal detention or entry, the consent is valid only if it was the product of a free will and not the result of exploitation of the previous illegality. State v. Owen, supra.
Thus, in the instant case, we have several issues to consider: (1) whether the consent was obtained after an illegal detention; (2) whether the consent was the product of free will and was freely and voluntarily given; and (3) whether the state satisfied its burden of proving that the parents had common authority over the premises, including the Defendant's room and its contents, or whether the officers belief that they had such authority was reasonable.

ILLEGAL ARREST
The Defendant argues that his arrest was illegal because it was not based on probable cause. He argues that Gardener's reliability was not sufficiently established and further that Gardner's arrest was illegal so the information obtained from him should not have been used to support the arrest of the Defendant.
An officer may make a warrantless arrest when there is probable cause to believe that the person to be arrested has committed an offense. State v. Davis, 00-278 (La.App. 5th Cir.8/29/00), 768 So.2d 201, 212, writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205 (citing LSA-C.Cr.P. art. 213). Law enforcement officers are however additionally authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Gresham, 97-1158 (La.App. 5th Cir.4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. Reasonable suspicion for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5th Cir.3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270. An anonymous tip, when corroborated by independent police work, may exhibit sufficient indicia of reliability to justify stopping a suspect. Alabama v. White, supra. Generally, there must be some corroboration of the informant's tip and the tip must contain predictive information regarding the future behavior of the reported suspect. Id. In determining whether an informant's tip furnishes reasonable suspicion or probable cause, the United States Supreme Court has applied a "totality of the circumstances approach" which considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983). "If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. at 330, 110 S.Ct. at 2416; Accord, State v. *481 Tovar, 03-513 (La.App. 5th Cir.10/15/03), 860 So.2d 51, 55.
In the present case, Gardner was neither an anonymous informant nor a confidential informant, but was somewhere on the spectrum between the two. He was questioned following the arrest of several individuals for narcotics violations. No evidence was introduced regarding the arrest of these individuals. Following a consent to search, marijuana was found in Gardner's home. No evidence was introduced to show that the consent to search Gardner's home was not properly obtained. Gardner thereupon told the officers that he obtained the marijuana from the Defendant and agreed to arrange a drug deal with the Defendant. Gardner was not under arrest at the time. The Defendant was paged and returned the page by telephone call to Gardner in the officers' presence. Deputy Jordan was present during the conversation between Gardner and the Defendant. He heard Gardner ask for two pounds of marijuana and arrange the exchange at a meeting at the Winn-Dixie in Gramercy. Gardner related to Deputy Jordan that the Defendant stated that he was in Kenner and needed to stop by his home to pick up the marijuana and then would meet Gardner in the parking lot. Gardner identified the Defendant to Deputy Jordan in the Winn-Dixie parking lot.
Upon considering the reliability of Gardner's information, we find that the Supreme Court addressed a similar situation in State v. Hills, 01-0723 (La.11/8/02), 829 So.2d 1027, 1028, cert. denied, 538 U.S. 1016, 123 S.Ct. 1938, 155 L.Ed.2d 855 (2003). In Hills, the informant had just been arrested for possession of cocaine. While he was in the process of being handcuffed, he told the officers that he did not want to go to jail and that the cocaine had been given to him by the defendant. He described the defendant's clothing and indicated to the officers that defendant was in a nearby apartment. The officers saw the defendant duck his head out of the doorway at least three times. The police subsequently arrested the defendant when he was walking down the staircase of the apartment building. Id. at 1029-1030.
The Louisiana Supreme Court concluded that the circumstances of the informant's arrest "gave [the informant] absolutely no incentive to lie about the source of his cocaine to feign cooperation with police in an attempt to improve his position." Id. at 1030. The Hills court pointed out that the informant had little or no time to invent a story to falsely implicate someone else and that he spoke spontaneously in the hope that he could help himself by "trading off information expanding the scope of the police investigation `up the chain' of the street-level drug trafficking." Thus, the Hills court concluded that the officer had a "substantial basis" for taking the informant at his word when he named defendant as his supplier and when he indicated defendant's location. Id. at 1031. The Court held that the circumstances under which the informant identified the defendant as his supplier vouched for the reliability of the information provided by the informant and established probable cause for the warrantless arrest of the defendant.
As in Hills, we find that the officers had a substantial basis for taking Gardner at his word when he named the Defendant as his supplier. Gardner voluntarily spoke to the officers upon being questioned and after a search of his home following consent. He was not under arrest at the time. The information received from Gardner combined with the officers' own observations corroborating the information which they were given was clearly sufficient to provide reasonable suspicion to justify an investigatory stop of the Defendant *482 in the Winn-Dixie parking lot. As Deputy Jordan approached the Defendant's vehicle and confirmed his identity, the reasonable suspicion ripened into probable cause to arrest when Deputy Jordan observed through the window the marijuana in plain view on the floor board of the vehicle. Accordingly, we find no illegality in the Defendant's arrest and, therefore, find that any arguments presented by the Defendant regarding suppression of the seized evidence because the seizure resulted from an illegal arrest have no merit.

FREE AND VOLUNTARY CONSENT
Next the Defendant argues that the state did not meet its burden of proving that his parents freely and voluntarily gave their consent to search the Defendant's room or that they had the authority to give such consent. More particularly, the Defendant argues that the State did not meet its burden of proving that the consent of Mr. and Mrs. Cambre was valid because the State failed to call them as witnesses to validate the State's representation that the consent was voluntary.
The State responds simply that the evidence was seized pursuant to a valid consent search.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. A search made without a warrant issued upon probable cause is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the state to affirmatively show that it was justified under one of the narrow exceptions to the rule requiring a search warrant. State v. Franklin, 353 So.2d 1315, 1318-1319 (La.1978).
As stated above, consent to search is an exception to the warrant requirement when the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974); State v. Gomez, 01-717 (La.App. 5th Cir.11/27/01), 802 So.2d 914, 918. A warrantless search may also be valid even if consent was given by one without authority, if facts available to officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 185-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Edwards, 97-1797 (La.7/2/99); 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). When the state relies on consent to justify a warrantless search, it has the burden of proving the consent was freely given. State v. Enclade, 03-353, p. 9 (La.App. 5th Cir.9/16/03), 858 So.2d 8, 15. Voluntariness of consent is a question of fact which the trial judge is to determine based on the totality of the circumstances. Id. The trial court's factual findings during a hearing to suppress evidence are entitled to great weight and should not be disturbed unless they are clearly erroneous. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1029, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
In this case, the trial court's written judgment indicates that the trial judge found that the consent of Mr. and Mrs. Cambre was voluntary. We find no error in the trial court determination and find *483 that it was fully supported by the record. Lieutenant Gonzalez testified that Mrs. Cambre invited the officers inside the house. Her husband came into the room. They both consented to the search of their home and their son's room. No promises, inducements, or threats were made to them to compel them to sign the consent form. The form, which was part of the record, was introduced into evidence at the hearing. Mr. and Mrs. Cambre accompanied the officers during the search, brought them to the Defendant's unlocked room and had full access to the room and its contents.
Nevertheless, the Defendant contends that the State could not satisfy its burden of proof without calling Mr. and Mrs. Cambre as witnesses at the hearing. The Defendant cites no jurisprudential or statutory support for this proposition.
Contrary to the Defendant's position, in State v. Shy, 373 So.2d 145, 148 (La.1979), the Louisiana Supreme Court held that the state satisfied its burden of proving the defendant gave valid consent to the police to search his luggage with the uncontroverted testimony of a police officer, who was the state's sole witness at the suppression hearing. Similarly, we find no error in the trial court's reliance on the uncontroverted testimony of Lieutenant Gonzalez and the finding that Mr. and Mrs. Cambre freely and voluntarily consented to the search of their home, including the room that their son occupied.

AUTHORITY TO CONSENT TO SEARCH
The next issue is whether Mr. and Mrs. Cambre had the authority to consent to the search of the Defendant's room and duffle bag. The Defendant argues that his parents did not have the authority to authorize the search of his room or the duffle bag where the contraband was discovered.
It has long been held that another occupant of a home can provide valid consent for a search of the premises. In United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the Supreme Court held that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. Matlock, 94 S.Ct. at 993. A footnote to the foregoing continues:
Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Matlock, 94 S.Ct. at 993, n. 7.
In State v. Cook, 345 So.2d 29, 32 (La.1977), the Supreme Court stated that Matlock's principles apply to searches made with the consent of parents having uncontrolled access to the belongings of children that reside with them. The Louisiana Supreme Court has also held that, absent unusual circumstances, a parent possesses at least common authority over the residence occupied by the parent and his child. State v. Packard, 389 So.2d 56, 58 (La.1980), cert. denied, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981); State v. Wagster, *484 361 So.2d 849, 855 (La.1978). In Wagster, the Supreme Court found the father had the authority to consent to a search of his nineteen-year-old son's van in the back yard of the family's residence. The van had no wheels and was being fixed by the son and used by the son as a sort of "playhouse." Id. at 855. The Wagster court reasoned that it was reasonable to conclude that the son had assumed the risk that his parents might permit the van to be searched because his parents had the joint right of access to and use of the van, which was used by the son, but entered by his parents with his consent when it was unlocked. Id.
In State v. Hudson, 404 So.2d 460 (La.1981), the sixteen year old defendant argued that his parents lacked authority to consent to a search of his pants, which were in a pile of dirty clothes in his bedroom that he shared with his brothers. The Louisiana Supreme Court rejected defendant's argument, holding that the parents possessed common authority of the bedroom. Id. at 462, 464-465.
Citing Wagster, the Supreme Court in State v. Packard, 389 So.2d 56, 58 (La.1980), cert. denied, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981) held that the police validly seized the marijuana found in the dresser drawer of the defendant's room because his mother had the authority to consent to a search of the room, which he shared with his wife. In that case, the Packard court found that no unusual circumstances were present which would indicate that the mother could not exercise her common authority over the bedroom. The Supreme Court pointed out that the defendant's situation was not unusual, since married persons often live with their parents and to have a lock on one's door was not unusual. Other factors indicating that the mother had the authority to consent to the search, included her behavior in permitting the search, the fact that she co-owned the house, and that the son paid no rent to her. Id. at 58-59.
Applying the above to the present case, we find that the trial court properly concluded that Mr. and Mrs. Cambre had common authority over their son's bedroom. Lieutenant Gonzalez testified that the Defendant did not pay rent and that buying some groceries was the Defendant's limited contribution to the household. Additionally, Lieutenant Gonzalez testified that the bedroom door was not locked and that Mr. and Mrs. Cambre, especially Mrs. Cambre, had "full access" to the room. There was no evidence that there were any unusual circumstances in this case that would indicate that they could not exercise common authority over the bedroom. Considering these factors, we find that Mr. and Mrs. Cambre had the authority to consent to the search of their home, including the bedroom that their son occupied and that Lieutenant Gonzalez was reasonable in his belief that they had that authority.
Upon entering the bedroom with Mr. and Mrs. Cambre, Lieutenant Gonzalez testified that he immediately detected the odor of marijuana and that the odor grew stronger as he neared the duffle bag. It was an odor he was familiar with from his experience as a narcotics officer. Clearly, at that point, with it obvious to his senses, Lieutenant Gonzalez had probable cause to believe the bag contained contraband.[8] The odor of marijuana coming from the bag coupled with the actual as *485 well as apparent authority of the Defendant's parents, the owners and occupants of the home, gave the officers the right to seize the duffel bag and its contents.
Based on the foregoing, we find no error in the trial court ruling deny the Defendant's motion to suppress the evidence seized in the room he occupied in his parent's home following his parents' consent to the search. The Defendant's arguments to the contrary lack merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The Defendant pled guilty to two counts, but the trial judge imposed only a single sentence for both convictions. The trial court must impose a separate sentence for each separate count on which the Defendant was convicted. La.C.Cr.P. art. 879; State v. Narcisse, 01-49 (La.App. 5th Cir.6/27/01), 791 So.2d 149, 155, writ denied, 01-2231 (La.6/14/02), 817 So.2d 1152; State v. Joseph, 96-187 (La.App. 5th Cir.11/14/96), 685 So.2d 237, writ granted in part and remanded for resentencing, 96-2998 (La.5/9/97), 693 So.2d 782.[9] While the record indicates that the Defendant was sentenced in accord with the plea agreement that provided for a twenty-five year sentence at hard labor, he nevertheless must receive a separate sentence for each offense.[10]
Accordingly, for the reasons set out above, we affirm the two convictions of the Defendant for possession with intent to distribute marijuana and possession of between 200 and 400 grams of cocaine, vacate the imposed single sentence, and remand for resentencing with a sentence to be imposed on each conviction.
CONVICTIONS AFFIRMED; SENTENCE VACATED; CASE REMANDED.
NOTES
[1] The Defendant filed motions to disclose the identity of the confidential informant, to suppress the confession and identification, as well as other pre-trial motions. All the motions were denied. The Defendant does not raise any issues relating to these motions on appeal.
[2] The Defendant filed a notice of intent to seek writs with this Court on the trial court's ruling. It is also noted that the minute entry of August 24, 2004 indicates that the Defendant was waiting for a ruling from the "5TH CIRCUIT." However, there is no record that the Defendant filed a writ application in this Court.
[3] It should be noted that Lieutenant Gonzalez refers to Deputy Jordan as a detective, while Deputy Jordan's testimony is that he was a deputy.
[4] Deputy Jordan testified that Gardner's wife lived there with him, was there when the officers arrived at the house and "when everything was taking place." It is not clear whether Gardner and his wife, or just one of them consented to a search of the house. Deputy Jordan testified that he knocked on the door and told "them" about the complaint, that "they" gave written consent to search "their" house, and that "they" told the officers where "they" got the marijuana. It is noted that, at this point in Deputy Jordan's testimony, he had not yet referred to Gardner by name.
[5] Lieutenant Detillier testified that he was at the parking lot at the time the Defendant was detained, but that he did not participate in the actual arrest. Lieutenant Detillier testified that he approached the vehicle after the Defendant was arrested.
[6] This sentence is indeterminate, which is discussed as a patent error.
[7] The Crosby plea serves as timely appeal under State v. Weiland, 556 So.2d 175, 176 (La.App. 5th Cir.1990).
[8] See, Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), in which the United States Supreme Court suggested that the distinctive odor of a substance, perceived by an individual qualified to know the odor, might well be evidence of a persuasive character in determining probable cause for a search.
[9] We are aware of the contrary rulings in State v. Batiste, 517 So.2d 371 (La.App. 5th Cir.1987), in which the defendant received a single sentence for two armed robbery convictions, State v. Mitchell, 476 So.2d 825 (La.App. 5th Cir.1985) in which the defendant was convicted of three counts of negligent homicide and sentenced to a single term of five years, State v. Smith, 461 So.2d 434 (La.App. 5th Cir.1984) in which the defendant was convicted of three counts of armed robbery and was sentenced to a single term of ten years, and State v. Barousse, 442 So.2d 1220 (La.App. 5th Cir.1983) in which the defendant pled guilty to two counts of simple crime against nature and was sentenced to a single term of three years. However, we do not find them controlling here where the two convictions are for distinctly different crimes that provide such diverse sentences.
[10] The need for individual sentences is particularly evident in the instant case where the convictions are for different offenses and the sentencing range is so varied for the two offenses. For his marijuana conviction, the twenty-five-year sentence imposed is five years from the maximum (La. R.S. 40:966(B)(2)), but for the cocaine conviction it is only five years from the minimum (La. R.S. 40:967(F)(1)(b)).