BOEHM, Justice,
concurring in result.
In my view, Craib's statements that Spillers was his supplier had sufficient in-dicia of reliability to satisfy the probable cause requirement for issuance of a warrant. I therefore agree that the trial court's order granting Spillers' motion to suppress evidence should be reversed, but disagree that resort to the Leon good faith rule is necessary to achieve that result.
The issue is not whether Craib's statements to the police were admissible at the warrant hearing under the "against penal interest" exception to the hearsay rule. The ultimate question in determining the trustworthiness of hearsay for the purpose of proving probable cause to issue a warrant is whether the surrounding cireum-stances, in their totality, show that the informant's information is reliable. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the cireumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."); Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (the magistrate must be informed "of some of the underlying cireum-stances from which the officer concluded that the informant ... was 'credible' or his information 'reliable' ") (internal citations omitted).
The majority concludes that Craib's statements were not against Craib's penal interest because Craib was caught "red handed" with cocaine in his possession before naming his purported supplier. The argument is that there is little risk in admitting what the police already know, so there is no basis to accept Craib's claims of the involvement of others. A second consideration is that a person in Craib's position is likely to try to curry favor with law enforcement and is therefore inherently unreliable. First, the fact that Craib had drugs in his possession plainly suggests he received them from someone, and corrobo *959 rates the "received" if not the "from Spil-lers" in his account. His claim was thus not wholly uncorroborated. Second, the State correctly points out that if Craib had given false information to deflect attention from his own criminal acts, he could have been prosecuted for false informing. Indiana Code section 85-44-22 (2004) makes the offense of false informing a Class B misdemeanor that may be elevated to a Class A misdemeanor. The majority notes that Craib was arrested for either a Class A felony (dealing) or a Class C felony (possession), and his potential additional liability for a misdemeanor offense (false informing) is relatively small. But even if the risk of false informing charges is viewed as a minimal additional exposure, I do not agree that Craib's statements exposed him to nothing more than what the police already knew. This is not a case where the only additional exposure was for false informing. After Craib was caught with drugs in his possession, he admitted not only that he had obtained the drugs from Spillers, but also that he had purchased drugs from Spillers over ten times since 2002, including a purchase the previous day. The majority concedes that Craib admitted to additional crimes of possession of cocaine, but concludes that this "was less a statement against his penal interest than an obvious attempt to curry favor with the police." I agree that Craib, apparently caught "red handed," had a strong incentive to shift blame or downplay his own role in comparison with that of others. But an informant caught "red handed" as to one offense, does not need to admit to ten other violations in order to steer the police to his dealer. Seq, eg., United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir.2001) (Where police caught an informant with drugs in his possession and he disclosed his supplier and the fact that he had purchased drugs from the supplier on "numerous occasions" over the previous year, the informant's statements could not be taken merely as blame-shifting because they admitted to criminal activities beyond those of which the police already knew him to be guilty).
I think the reliability of statements by persons caught "red handed" does not stem solely from the fact that one does not "lightly admit a crime and place critical evidence in the hands of the police." United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). That is a factor, as the Supreme Court of the United States held in Harris But reliability also stems from the fact that a person who knows that law enforcement officers are already in a position to charge a serious crime will not lightly undertake to mislead them. See 2 Wayne R. LaFave, Search & Seigure A Treatise on the Fourth Amendment § 3.3(c), p. 129 (8d ed.1996). The risks of prosecution for the inaccurate statements and perhaps more significantly, the risk of harsher treatment by the prosecution in the form of multiple counts and harder plea bargaining afford the requisite indicia of reliability. I think this meets the practical "common sense" test of, as Gates put it, producing a "fair probability" that the information has at least a core of truth. I am not alone in this view.[9] In short, I think a "practical *960 common sense" evaluation of the officers' account of Craib's statements leads to the conclusion that a warrant properly issued.
DICKSON, J., concurs.

. See, eg., United States v. Davis, 617 F.2d 677, 693 (D.C.Cir.1979); People v. James, 118 Ill.2d 214, 113 Ill.Dec. 86, 514 N.E.2d 998, 1002 (1987) (stressing informant "had nothing to gain by providing false information for, once the falsehood was discovered, he would have to suffer the consequences of misleading the police."); State v. Hills, 829 So.2d 1027, 1030-31 (La.2002) (informant had "absolutely no incentive to lie about the source of his cocaine," as he "had just been arrested for possession of 19 bags of cocaine, knew that he faced serious felony charges" and "could reasonably assume that the police would react *960 to his information ... by attempting to verify or discount it"); State v. Mosley, 412 So.2d 527, 531 (La.1982) (sufficient admission against interest notwithstanding the fact informant was caught red handed in light of other factors, including that tip had considerable specificity and "that any discrepancies in his story might go hard with him"); Commonwealth v. Alvarez, 422 Mass. 198, 661 N.E.2d 1293, 1299 (1996) (the informant, already in custody for sale of drugs, explained their source and thus knew the statements in that regard could lead to his prosecution on drug charges); State v. Read, 416 A.2d 684, 689 (R.I.1980) (though defendant had already been found in possession of marijuana when he gave information regarding purchase of the drugs, "one in the position of an arrestee would not be likely to exacerbate his circumstances by telling the arresting officers an untruthful account of his source of supply."); State v. Wielgus, 278 N.W.2d 805, 808 (S.D.1979) (defendant's argument informant "had a motive to falsify information to the police in order to ingratiate himself with the officers . cuts two ways," as assuming informant "had reason to please the officers, to supply them with false or misleading information would surely not accomplish that goal."); State v. Ward, 231 Wis.2d 723, 604 N.W.2d 517, 524-25 (2000) (where an informant, an arrested drug dealer, identified the defendant as his supplier and the defendant claimed the informant was "inherently unreliable" because he was "attempting to bargain his way out of jail," the court concluded that the informant "was making an inculpatory statement under circumstances where, if his statements were found to be untruthful, [the informant] would be in deeper trouble.").