832 So.2d 382 (2002)
STATE of Louisiana
v.
Gerald JONES, et al.
No. 2002-K-1931.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 2002.
Writ Denied December 4, 2002.
*383 Harry F. Connick, District Attorney, Kathleen Billings, Assistant District Attorney, New Orleans, LA, for Plaintiff-State of Louisiana.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY).
MIRIAM G. WALTZER, Judge.
The prosecution invokes our supervisory jurisdiction to review the granting of a motion to suppress by the court below. We affirm the trial court's ruling.
STATEMENT OF THE CASE
On 19 July 2001, Gerald Jones was charged with one count each of distribution of cocaine, distribution of marijuana[1], possession with the intent to distribute cocaine[2], and possession of a firearm while in possession of cocaine. In the same bill of information Samuel Raiford was charged with three counts of distribution of cocaine. Both defendants have pled not guilty to the charges. On 18 January 2002, the court heard and granted the motion to suppress the evidence. The court also set a trial date. In response to the State's emergency writ, which apparently did not include the transcript of the suppression hearing, this court reversed the trial court's ruling and remanded the *384 case. State v. Jones, unpub. XXXX-XXXX (La.App. 4 Cir. 3/8/02). The Supreme Court denied writs. State v. Jones, XXXX-XXXX (La.5/22/02), 815 So.2d 851.
On 10 July the defendant moved to reopen the motion hearing, which the trial court granted on 25 July. On 23 August, the court heard and again granted the motion to suppress. The State now comes before this court seeking relief from this ruling. The State also requests the issuance of a stay in this matter; after the State filed its application the court set a trial date of 7 November 2002.
FACTS
Officer Wayne Jacques was the only witness to testify at the 18 January 2001 suppression hearing, which was the only hearing at which testimony was taken. Off. Jacques testified that sometime prior to 18 April 2001 while working undercover, a confidential informant had introduced him to a man called "Dinky", who he later learned was the defendant Samuel Raiford. Off. Jacques testified that Raiford gave him his cell phone number and instructed the officer to call him if he wanted to purchase any cocaine. Off. Jacques stated he also learned that Raiford was connected to a residence in the 2000 block of Allen Street and to another residence in the 1900 block of Frenchmen Street.
Off. Jacques testified that on 18 April 2001 he called Raiford and told him he wanted to buy some cocaine. The men negotiated a deal. Off. Jacques stated that later that evening he met Raiford in the 1800 block of N. Miro Street. He testified Raiford parked next to his vehicle, and Off. Jacques got into Raiford's vehicle. Raiford told him he didn't have the cocaine with him at that time, but he could get it nearby. Off. Jacques exited Raiford's car and went back to his vehicle to wait. Raiford drove from the block, and officers began following him, but they soon lost him. However, he shortly showed up in the 1900 block of Frenchmen, where other officers were conducting a surveillance. Those officers saw him enter a residence at 1921 Frenchmen, where he remained a short time. Raiford left the residence and drove back to the 1800 block of N. Miro. Off. Jacques again entered Raiford's car, and Raiford gave him cocaine in exchange for $1000. Off. Jacques exited his car, and Raiford drove from the scene.
Off. Jacques testified he attempted a few times after 18 April to set up another drug transaction, but it was not until 1 May 2001 that he was able to do so. On that date, he called Raiford and told him he wanted to buy two ounces of cocaine. Raiford told him to call back later, and they eventually agreed to meet in the 2000 block of Allen Street. When Off. Jacques arrived at that location, Raiford was waiting for him. Raiford again told him he did not have the drugs on him, and he indicated he needed to contact his supplier. Off. Jacques testified Raiford used his cell phone to call a man named "Fat". Soon thereafter a man later identified as the defendant Gerald Jones drove up and parked in the driveway at 2011 Allen. Jones exited his car and spoke with Raiford, and Raiford then went to Off. Jacques, who told him he only needed one ounce of cocaine. Off. Jacques gave Raiford money for the cocaine. Raiford walked back to Jones, and both men went inside the Allen Street residence. When they exited, Raiford was carrying a bag which he gave to Off. Jacques. The bag contained one ounce of cocaine. The parties dispersed, and some officers followed Jones back to the Frenchmen address and saw him enter.
Off. Jacques testified that he obtained an arrest warrant for Raiford, and on 18 May 2001 he again contacted Raiford and told him he wanted to buy an ounce of *385 cocaine. At that time, the officers had also established a surveillance of the Frenchmen Street residence. Raiford told Off. Jacques he needed to make a phone call to set up the deal. Officers saw him enter the Frenchmen residence, and Raiford called Off. Jacques from inside the residence, told him he had the cocaine, and told him to meet him on Allen Street. The officers watched Raiford leave the Frenchmen residence and drive to the 2000 block of Allen Street, where he met with Off. Jacques. Off. Jacques testified Raiford handed him a disposable diaper inside of which was the ounce of cocaine. In exchange, Off. Jacques gave him $800 in prerecorded bills. After Raiford left, other officers arrested him and found the prerecorded bills. Off. Jacques went to get a search warrant for the Frenchmen Street residence, while other officers went to that residence and entered it to secure it prior to the issuance of the warrant, Raiford's arrest having occurred somewhere near the Frenchmen Street residence. Off. Jacques testified that pursuant to the search of 1921 Frenchmen Street, the officers seized approximately one and half ounces of cocaine, a small amount of marijuana, a firearm, approximately $1600, and documentation in Jones' name.
On cross-examination, Off. Jacques testified neither he nor any other officer saw cocaine on Jones' person. Off. Jacques admitted the police report indicated the officers did not receive any consent to search the Frenchmen Street residence. He testified that although he was not present during the search, he was told that Jones was arrested after the contraband was found in his house. He also admitted that police documents listed the time of Jones' arrest as 3:25 p.m. and the time of the seizure of the evidence as 3:21 p.m., but the search warrant was not signed until 3:54 p.m. Off. Jacques then admitted that the officers searched the house prior to the issuance of the warrant. He also admitted that the search warrant affidavit did not mention that the house had already been searched, nor did he inform the magistrate that the officers had already searched the house.
DISCUSSION
At the conclusion of the 18 January 2002 hearing, the trial court suppressed the evidence seized from the house, finding that the evidence was seized prior to the issuance of the search warrant, and the State failed to present any evidence that the officers had consent to search the house prior to the issuance of the warrant.
The State noted its intent to seek writs, and by the time it filed its application in this court the application was filed as an emergency writ because trial was pending. This court reversed the trial court, finding the search of the residence prior to the issuance of the warrant was lawful because Jones had consented to the search. The transcript of the suppression hearing was not included in the emergency writ application, and it appears this court thought Jones had consented to the search due to allegations to that effect in the State's application. However, the transcript indicates that not only did the State not present any evidence of this consent, Off. Jacques admitted there was no consent to search. This court also found that the search was lawful because there was probable cause for the issuance of the warrant, and the officers would have inevitably discovered and seized the evidence if they had waited for the warrant. The Supreme Court denied writs.
The defendants subsequently moved to reopen the suppression hearing based upon the U.S. Supreme Court's ruling in Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). In Kirk, the *386 officers had received a tip concerning drug sales from the defendant's residence. The officers watched several drug transactions and then stopped one buyer on the street outside the defendant's residence. Because the stop was near the residence, the officers knocked on defendant's door, entered the house, arrested the defendant, and "secured" the residence while they obtained a search warrant. A search incident to the arrest netted drugs, and the officers also saw contraband lying in plain view. The defendant was convicted, and on appeal he contended the evidence should have been suppressed because the officers were not justified in entering the residence in the absence of exigent circumstances. This court affirmed his conviction, finding that because the officers had probable cause to arrest him, there was no need for this court to determine whether there were exigent circumstances to allow them to enter. State v. Kirk, XXXX-XXXX (La.App. 4 Cir. 11/15/00), 773 So.2d 259. The Louisiana Supreme Court denied writs. State v. Kirk, XXXX-XXXX (La. 11/09/01), 801 So.2d 1063.
The U.S. Supreme Court reversed. The Court looked to Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where that Court held that officers cannot enter a residence to effectuate a warrantless arrest, absent exigent circumstances. The Court noted that the officers entered Kirk's home without an arrest or a search warrant, and that this court specifically did not make a determination of whether there were exigent circumstances which would have allowed them to enter the residence. The Court stated: "As Payton makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home. The Court of Appeal's ruling to the contrary, and consequent failure to assess whether exigent circumstances were present in this case, violated Payton." 447 U.S. at 756, 100 S.Ct. at 2459. The Court declined to make a finding as to the presence or absence of exigent circumstances in the case, remanding the case "for further proceedings not inconsistent with this decision." Id.
In the present case, the State argues the officers were justified in entering Jones' residence because they had probable cause to believe there were drugs at the residence, and the arrest of Raiford "near" Jones' residence gave them exigent circumstances to enter without the warrant. In State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, this court discussed the warrantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La. 1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001[, 71 L.Ed.2d 294] (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Julian, XXXX-XXXX (La. App. 4 Cir. 3/4/01), 785 So.2d 872; writ den. XXXX-XXXX (La.3/22/02), 811 So.2d 920; State v. Brown, 99-0640 (La.App. 4 Cir. 5/26/99), 733 So.2d 1282.
At the 23 August 2002 hearing in this case, the trial court found that Kirk was *387 controlling. The court noted that in January, it found the State failed to show any exigent circumstances which would have allowed the officers to enter Jones' residence prior to the issuance of the search warrant. The State now argues that there were exigent circumstances in that Raiford's arrest was "near" Jones' residence, and Raiford was returning to Jones' residence when he was arrested. However, the transcript is not clear how far away from the residence the officers arrested Raiford, and indeed in its present application to this court the State notes the arrest took place approximately five blocks from the Frenchmen Street residence. In addition, there is no indication in the transcript that Raiford was on his way back to the residence when he was arrested.
Off. Jacques admitted that the officers had at least two arrest warrants for Raiford at the time of the 18 May transaction, one each having been obtained after the 18 April and 1 May buys. In addition, although Off. Jacques did not try to get the search warrant for the Frenchmen Street residence until after the 18 May buy, the officers at least had an idea they were going to try to get that warrant on that date because Off. Jacques testified he had partially typed the affidavit for the search warrant and only had to add the paragraphs concerning the 18 May transaction before presenting the affidavit and application to the magistrate. Thus, as brought out at the 18 January hearing by Jones' counsel, the officers had probable cause prior to the 18 May transaction to believe there were drugs in the Frenchmen Street residence and they could have gotten a search warrant prior to that transaction, but instead they merely got the arrest warrants for Raiford and waited until he was arrested and they had entered the Frenchmen Street residence to "secure" it before trying to get the search warrant for that residence. In addition, the officers chose to arrest Raiford after he left the Allen Street location, speculatively on his way back to the Frenchmen Street residence. As such, there is merit to defense counsel's argument that any "exigent circumstances" in this case were created by the officers' decisions to wait to get the search warrant and to arrest Raiford "near" the residence. Thus, the trial court did not abuse its discretion by finding there were no exigent circumstances which would have allowed the officers to enter the residence prior to obtaining the warrant.
The officers searched the Frenchmen residence prior to the issuance of the search warrant for that residence. As noted above, this court initially granted the State's earlier writ partially on the basis of the State's assertion in its application that Jones consented to a search of the residence. However, the transcript reveals that the State presented no evidence of this consent, and indeed Off. Jacques testified there was no consent given. The other basis for this court's earlier ruling was that the evidence did not need to be suppressed because the evidence would have inevitably been discovered once the officers obtained the warrant. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the Court noted there are three exceptions to Wong Sun's exclusionary rule: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. See also State v. Welch, 449 So.2d 468 (La.1984); State v. Irby, 93-2220 (La. App. 4 Cir. 2/4/94), 632 So.2d 801. As this court noted in State v. Tassin, 99-1692, pp. 4-5 (La.App. 4 Cir. 3/15/00), 758 So.2d 351, 354:
In Nix v. Williams, 467 U.S. 431, 446-47, 104 S.Ct. 2501, 2510-11, 81 L.Ed.2d *388 377 (1984), the Supreme Court held that the exclusionary rule does not apply when the State proves that the unconstitutionally obtained evidence would inevitably have been found in a constitutional manner. "The court's decision was based on its belief that it is unfair to penalize the government through application of the exclusionary rule where the police would have obtained the evidence even if no misconduct occurred." State v. Garner, 621 So.2d 1203, 1208 (La.App. 4 Cir.1993), writ denied, 627 So.2d 661 (La.1993).
Here, there was probable cause for the issuance of the warrant. Off. Jacques conducted three undercover buys of drugs from Raiford, and in two of those buys (including the 18 May transaction) Raiford got the cocaine from the Frenchmen Street residence; in the third, Jones (who lived at the Frenchmen Street residence) arrived on Allen Street, and both he and Raiford entered the Allen Street residence to get the cocaine. Given these factors, there was probable cause to believe there was cocaine in the Frenchmen Street residence, and thus there was probable cause for the issuance of the warrant. See State v. Powell, XXXX-XXXX (La.App. 4 Cir. 12/12/01), 804 So.2d 802; State v. Hoffpauir, 99-0128 (La.App. 4 Cir. 4/7/99), 731 So.2d 1026; State v. Page, supra.
It is not clear, however, that the fact that the officers eventually got the warrant would save the warrantless search in this case. In Kirk, the officers entered the house and found drugs in plain view. They obtained a search warrant while they detained the defendant in his home. Nevertheless, the U.S. Supreme Court vacated the defendant's conviction and sentence, even though they ultimately obtained the search warrant for the residence, because there was no finding of exigent circumstances which justified their prior entry into the residence. Here, the court found no exigent circumstances, and for the reasons set forth above, the trial court may well have been justified in so finding due to the fact that any "exigency" in this case was due to the officers' actions (or inactions) rather than to circumstances beyond the officers' control. Under Kirk if there were no exigent circumstances to support the entry, the subsequent issuance of the search warrant would not cure the taint of the illegal entry. Indeed, the situation here is much worse than that in Kirk because in Kirk there was no indication the officers searched the residence prior to the issuance of the warrant. Here, the evidence showed the officers did not wait for the issuance of the warrant, but instead began searching the residence as soon as they entered, and there was no evidence of any consent to search prior to the issuance of the warrant. As such, under Kirk, the subsequent issuance of the search warrant could not be applied retroactively to the prior search to remove the taint of the illegal entry.
The determining factor of this writ appears to be whether there were exigent circumstances for the officers to enter the Frenchmen Street residence prior to the issuance of the warrant. In State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245, this court stated: "The trial court is vested with great discretion when ruling on motion to suppress." See also State v. Briley, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1191. Given the actions of the officers in this case, the trial court did not abuse its discretion by finding no exigent circumstances and suppressing the evidence seized from the Frenchmen Street residence.
APPLICATION FOR SUPERVISORY WRITS GRANTED. JUDGMENT OF THE TRIAL COURT ON MOTION *389 TO SUPPRESS AFFIRMED. REQUEST FOR STAY DENIED.
NOTES
[1] This court was later amended to charge possession with the intent to distribute marijuana.
[2] This count was later amended to charge possession of at least 28 but not more than 200 grams of cocaine.