STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-184

STATE OF LOUISIANA

VERSUS

SHANE EVERET EVANS

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 272,060
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE
**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Glenn B. Gremillion, Billy H. Ezell, and James T. Genovese, Judges.

Gremillion, J., dissents and assigns written reasons.

**WRIT GRANTED.**

**James C. Downs**
**District Attorney**
**Ninth Judicial District Court**
**701 Murray Street**
**Alexandria, LA 71301**
**(318) 473-6650**
**Counsel for Plaintiff/Respondent**
      **State of Louisiana**

**Michael A. Brewer**
**1330 Jackson Street**
**Alexandria, LA 71303**
**(318) 443-4006**
**Counsel for Defendant/Applicant**
**Shane Everet Evans**

**EZELL, JUDGE**.

The Defendant, Shane Everet Evans, is charged with possession of a controlled dangerous substance (methamphetamine) in violation of La.R.S. 40:967(C), distribution of methamphetamine in violation of La.R.S. 40:967(A), and illegal possession of a firearm while in possession of marijuana in violation of La.R.S. 14:95(E). The Defendant filed a motion to suppress which was denied by the trial court on September 21, 2004. The Defendant sought review of this ruling by filing a pre-trial writ of review with this court.

On March 3, 2005, this court granted the writ and placed it on the appeal docket. All proceedings in this case were stayed until further action of this court.

## ASSIGNMENT OF ERROR

The Defendant contends the trial court erred in denying his motion to suppress arguing that the officers conducted a warrantless search of his home, without exigent circumstances.

At the hearing on the motion, Rapides Parish Detective Mark Wood, lead investigator on the arrest of the Defendant on August 25, 2003, testified as follows:

> Okay. I'll start at the beginning. I was contacted by an informant, a confidential informant, and was told of a couple that would be -- that he could get some crystal meth through. He told me that the guy told him that he would be traveling somewhere down the road to pick this up. My plan was, after I talked to him, that I was going to get the other agents to help me and we was going to follow the couple which was Gary and Kay Lachney, and follow them to the location and try to see where they was getting the meth. You know, see the -- they were -- they were acting kind like a middle broker or a middle person is what they was doing, they was getting it from a supplier. So, we set up on the house. I had several agents involved and about 3 or 4 different cars. I had my CI, once everybody was in the location, make the phone call, the final call to Gary. Gary said, 'Yeah, I'm going to be leaving in a little bit.' And he did.

He explained that he and the other officers conducted surveillance of the Lachney house.

1

Detective Wood stated that after the phone call, Lachney and his wife left their house in a Jeep Cherokee and made a brief stop at the Exxon station. They then drove to the suspect's house and stayed about an hour. He explained that during the stakeout of the suspect's house, a state trooper came by and told him that the Defendant lived in that house and that he was suspected of selling methamphetamine. Detective Wood stated that he did not include the corroborative information obtained from the state trooper in his search warrant affidavit or report. He explained the omission as an oversight. When the Lachney vehicle left the Defendant's home, the police followed it to Byron Chapel Road where they pulled it over at 5:30 p.m.

Detective Wood testified that he told Mr. Lachney that they knew where he went and what he did and asked him if he got the drugs from the Defendant. Within a few minutes, Mr. Lachney admitted he had the drugs and that he had gotten them from the Defendant's house. The vehicle was then searched by officers.

Detective Wood stated that during the questioning, there was a lot of road traffic passing by them. Detective Wood instructed the confidential informant to go to the Lachneys' house, as he had planned, to wait for the drugs. While the confidential informant was there, the Lachneys' children received a phone call instructing them to tell their parents to stay away from the Defendant's house. The caller said the house was being watched and "maybe fixing to be hit." The confidential informant relayed this information to police. Detective Wood said the caller was a known methamphetamine user and dealer in the area. He further testified that neither his police report nor his affidavit for the search warrant contained the information that the Lachneys' children had received the phone call because he did not want his confidential informant to be harmed.

2

Detective Wood testified that he decided to enter the Defendant's house and then get the search warrant. He stated, "we just rolled the dice." He explained his thought process as follows:

> I discussed that, my lieutenant was with me, and uh, the other agents involved, um, first off, the first thing Gary told me was the guy when he went in there, there was definitely more narcotics on the table, there was several hand guns, a sawed off shotgun I believe it was, rifles. Uh, he said the guy was a gun buff, so that alerted me. Um, with -- when the CI, like I say, when the CI contacted me and told me what he said, well I knew everything was out of the bag then. So, I went to my lieutenant and I said, 'Look Lieu, this is the way -- this is what I know, he's got guns, he's got more narcotics in the house; there's another individual in the house. As far as I know, there's 2 in there from what Gary is telling me. Uh, I would like to go secure the house to keep him from getting rid -- because everybody knows now, evidently, that we've stopped these people and they just came from there.' So, we agreed and uh, that's all we did was secure the residence.

The court notes that Detective Wood did not include this information in his application for the search warrant. The affidavit states, in pertinent part:

> Your Affiant decided that due to the admission by Gary Lachney of his recent purchase of Methamphetamine from Shane Evan's residence, the fact that detectives were able to maintain surveillance over Gary Lachney during the purchase and transport of suspected Methamphetamine that Your Affiant and assisting detectives would secure Shane Evan's residence pursuant to a search warrant. As Gary and Karen were being transported Your Affiant decided to drive Gary Lachney's Jeep Grand Cherokee to the Deville Sub-Station to clear the roadway quickly and expedite the detective's arrival to 6817 Hickory Grove Road, Deville, La.

The search warrant was obtained at 9:02 p.m.

It is important to note that the affidavit does not contain information giving rise to exigent circumstances, in contrast to Detective Wood's testimony at the hearing.

At the hearing, Detective Wood testified that he and the nine other officers met at the Deville substation and made a plan to secure the house. The police broke down the Defendant's door and entered the house at 7:50 p.m. The occupants were told to "sit tight" and were *Mirandized*. Detective Wood stated he saw a large amount of

3

crystal methamphetamine, scales, some money on the coffee table, and two or three handguns in a corner. Detective Wood stated that he secured the residence, but did not collect the drug evidence and went back to the office and typed a search warrant. He stated that he secured the residence so the Defendant could not get rid of the evidence. No one was allowed to leave the residence. After the search warrant was obtained and executed, other narcotics evidence was discovered. We note the Defendant is not seeking to suppress the additional evidence seized pursuant to the search warrant, but only the evidence in plain view when the police secured the residence.

On cross examination, Detective Wood testified that when Lachney arrived at the home of the Defendant, he was believed to be in the process of purchasing narcotics. Detective Wood testified that he, five other narcotics agents, and three uniformed police officers were involved in the investigation. During the surveillance of the Defendant's house, the officers were in various locations nearby. Detective Wood acknowledged that he could have sent an officer to the substation to prepare a warrant. He stated that he did not want to leave the location, explaining that he did not know how long the drug deal would take. Detective Wood testified that he would not have sought a warrant in advance because he did not know for sure that the drug deal had taken place. He explained that when the Lachneys left the Defendant's house, the officers knew then that the drugs had been sold. How he knew this was not explained.

A few minutes after the Lachneys left, their vehicle was stopped on Byron Chapel Road. Detective Wood testified that the basis for the stop was the information he had received from the informant and the fact that they had left the Defendant's house. Mr. Lachney was held on the side of the road for about one hour.

4

Detective Wood testified that before the day of the investigation he had never met Mr. Lachney. He stated:

Q    He was -- he was never a confidential informant for you, correct?

A    No, sir.

Q    He had never given you information before, is that correct?

A    No, sir.

Q    There was no reason for you to assume that he was reliable, is that correct?

A    Can -- can I say something, sir?

BY THE COURT:

    If it's in answer to that question you can.

A    Okay. At that time, I felt he was reliable.

Q    I understand but he -- besides the fact that you had heard that he was going down there, you knew he stopped at the Exxon, okay. Your confidential informant did not tell you that he was going to pick up anything from the Evans' house; is that correct?

A    That's correct, he did not know where he was going, sir.

Q    Okay, so the only real reason that you had to believe that he had um, bought this from -- from Mr. Evans, was what Mr. Lachney said?

A    Yes, sir, I believed him.

Q    You believed him, but that's the only reason because that's the only evidence that you had, that he bought it from the Evans' house was what Mr. Lachney said?

A    Yes, sir.

Detective Wood explained that Mr. Lachney was terrified he would lose his job, so he was believable when he admitted where he had bought the drugs.

Detective Wood stated that he then planned on obtaining a search warrant, but he felt like they needed to move. Detective Wood stated that he had been to the trial

5

judge's home many times to obtain warrants. He testified the judge's home is about fifteen miles away. He stated it usually takes him about thirty minutes to type a warrant. Detective Wood acknowledged that from the time they arrived at the Defendant's house until the raid was about two hours and twenty minutes.

Following the hearing on the motion to suppress, the trial court took the matter under advisement. Court minutes dated September 21, 2004 state: "Court addresses the Motion to Suppress that has been under advisement. Court gives reasons and at this time denies the motion. Defense objects to the court's ruling. Court notifies the state and defense that the ruling will be followed by written reasons later this week." This court initially denied a previous writ in this matter because the Defendant had failed to include a transcript of the trial court's reasons for denying the motion. Upon refiling this writ, the Defendant states that "there exists no written reasons" for the trial court's ruling. Although he further acknowledges the above minute entry, Defendant states that: "The court reporter indicates that there exists nothing on the record for that day. There is simply a minute entry denying the motion to suppress."

The Defendant argues that there existed no exigent circumstances that would qualify as an exception to the search warrant requirement. He contends Detective Wood had ample time to obtain a search warrant, but decided not to. The Defendant states that Detective Wood admitted he eliminated any judicial oversight in this investigation and decided to "just roll the dice."

This court in *State v. Lewis*, 04-20, pp. 5-6 (La.App. 3 Cir. 6/2/04), 878 So.2d 758, 762-63, explained exigent circumstances as follows:

> With regard to warrantless searches, the supreme court has held in *State v. Brisban*, 00-3437, p. 4 (La.2/26/02), 809 So.2d 923, 927:
>
>> Warrantless entries into the home for arrest or seizure are invalid in the absence of exigent circumstances. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639

6

(1980). The Fourth Amendment has drawn a firm line at the entrance to the home, and a police officer therefore needs both probable cause to arrest or search and exigent circumstances to justify a non-consensual warrantless intrusion into a private premises. *State v. Talbert*, 449 So.2d 446 (La.1984); *State v. Hathaway*, 411 So.2d 1074 (La.1982).

Exigent circumstances include situations where law enforcement officers have reasonable grounds to protect the lives of others, the entry and search is not motivated by an intent to arrest someone or to seize evidence, and there is a reasonable basis to associate an emergency with the area to be entered and searched. *State v. Kirk*, 00-190 (La.App. 4 Cir. 11/13/02), 833 So.2d 418, *writ denied*, 02-3079 (La.5/9/03), 843 So.2d 394, (citing *Roska v. Peterson*, 304 F.3d 982 (10th Cir.2002), *abrogated in part on other grounds*, 328 F.3d 1230 (10th Cir.2003)). As stated in *Kirk*: "The United States Supreme Court has defined exigent circumstances as 'a plausible claim of specially pressing or urgent law enforcement need.' *See Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001)." *Id.* at 420.

The court does note that although the instant exception to the warrant requirement requires both probable cause and exigent circumstances, the Defendant only argues that exigent circumstances were not present.

Relevant factors for exigent circumstances have been stated by the United States Third Circuit in *United States v. Rubin*, 474 F.2d 262, 268-69 (3Cir. 1973), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173 (1973) (citations omitted), as:

When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) reasonable belief that the contraband is about to be removed, (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, (4) information indicating the possessors of the contraband are aware that the police are on their trail [sic], and (5) the ready destructibility of the contraband and the

7

knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*See also United States v. Thompson*, 700 F.2d 944, (5 Cir. 1983).

The Defendant attempts to distinguish the similar case of *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380 (1984) where the United States Supreme Court limited its review to the question of whether the evidence *not seen* during the initial warrantless entry, but found pursuant to the search warrant, should be suppressed. In the instant case, only the evidence discovered or "seized" during the initial warrantless search is at issue. The Defendant is not seeking to suppress the evidence obtained after the search warrant was executed.

In *Segura*, both the district court and the court of appeal held that the initial warrantless entry into the home was illegal because it was without exigent circumstances. The facts in that case are as follows:

> Acting on information that petitioners probably were trafficking in cocaine from their apartment, New York Drug Enforcement Task Force agents began a surveillance of petitioners. Thereafter, upon observing petitioner Colon deliver a bulky package to one Parra at a restaurant parking lot, while petitioner Segura and one Rivudalla-Vidal visited inside the restaurant, the agents followed Parra and Rivudalla-Vidal to their apartment and stopped them. Parra was found to possess cocaine, and she and Rivudalla-Vidal were immediately arrested. After being advised of his constitutional rights, Rivudalla-Vidal admitted that he had purchased the cocaine from petitioner Segura and confirmed that petitioner Colon had made the delivery at the restaurant. Task Force agents were then authorized by an Assistant United States Attorney to arrest petitioners, and were advised that a search warrant for petitioners' apartment probably could not be obtained until the following day but that the agent should secure the premises to prevent destruction of evidence. Later that same evening, the agents arrested petitioner Segura in the lobby of petitioners' apartment building, took him to the apartment, knocked on the door, and, when it was opened by petitioner Colon, entered the apartment without requesting or receiving permission. The agents then conducted a limited security check of the apartment and in the process observed, in plain view, various drug paraphernalia. Petitioner Colon was then arrested, and both petitioners were taken into custody. Two agents remained in the apartment awaiting the warrant but because of "administrative delay" the search warrant was not issued until some 19 hours after the initial entry into the

8

apartment. In the search pursuant to the warrant, the agents discovered, *inter alia*, cocaine and records of narcotics transactions. These items were seized, together with those observed during the security check.

*Id.* at 3381.

In the present case, the record reveals that the entry into the Defendant's home was made without consent and without a warrant. Therefore, the State had the burden of showing that an exception to the warrant requirement applied in this case. The record before this court does not contain arguments of counsel at the hearing on the motion to suppress. However, it appears from the officer's testimony at the hearing that he felt exigent circumstances existed when he decided to proceed without a search warrant to secure the drug evidence. Detective Wood testified that he decided to move when he received information from his informant that the Lachney house had been called by someone warning them to stay away from the Defendant's house.

In *State v. Atkins*, 02-1963 (La. 7/16/02), 821 So.2d 483, the Louisiana Supreme Court found exigent circumstances existed for a warrantless entrance. The short ruling stated:

> The police officers' fears that person(s) in the neighborhood who had observed the detention of Dorsey and Holmes would call to alert defendant to the police presence and that evidence would be destroyed was reasonable under the circumstances and constitute "exigent" circumstances, justifying police entrance into the apartment without the warrant yet being issued.

*Id.* at 483.

The Louisiana Supreme Court also found exigent circumstances in *State v. Hills*, 01-723 (La. 11/8/02), 829 So.2d 1027, *cert. denied*, 583 U.S. 1016, 123 S.Ct. 1938 (2003). In *Hills*, the police officers received a tip from a confidential informant that the subject was selling drugs near an abandoned house. Police watched the area and witnessed a drug sale between two men across the street. The two men were arrested. One subject confessed to police that he got the drugs to sell from the

9

defendant, and he motioned to the apartment above him. The police saw the defendant repeatedly opening his front door and watching them, and then attempting to leave the residence. The police returned the defendant to his apartment and conducted a protective sweep. The defendant confessed that his drug stash was hidden outside and the police then obtained a search warrant.

The *Hills* court stated:

> Sergeant Gaudet also had a reasonable basis for assuming that he faced a now-or-never situation precipitated by respondent's apparent attempt to leave the apartment with his family. See *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973) ("Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.") (footnote and citations omitted). For all the officers knew, respondent realized that Scott might volunteer information to save himself and was taking steps to remove or destroy the rest of his cocaine "stash." The officers therefore possessed exigent circumstances to stop respondent and his female companion on the stairway and return them to the apartment to conduct a protective sweep of the premises, thereby preventing the loss or destruction of any evidence, and to wait for a warrant before conducting a more thorough search. *See Moore*, 790 F.2d at 16 ("Because the sale and the arrests took place immediately outside the apartment [building], the agents could reasonably believe that the failure of [the dealer] to return to the apartment promptly with the money could create a substantial risk that appellant would flee or destroy evidence. Under these exigent circumstances, the agents were justified in entering appellant's apartment without a warrant."); *see also United States v. Edwards*, 602 F.2d 458, 468 (1st Cir.1979)("[T]he possibility that evidence will be destroyed by defendants who have discovered government surveillance of their activities often has been recognized as a sufficient exigency to justify warrantless entry.")(collecting cases). Respondent's spontaneous statements made as the officers waited for the warrant were therefore not tainted by any prior illegal conduct of the police.

*Id.* at 1031(alteration in original).

However, the *Hills* case can be distinguished, in that the defendant actually witnessed the apprehension of his drug client in front of his apartment and had notice that the police were investigating the drug sales. In the instant case, there is no direct evidence that the Defendant knew that his drug client had been apprehended a few

miles away. There was no evidence specifically relating the phone call to the Defendant. Detective Wood testified that the caller was a known drug user and dealer in the area who called to tell the Lachneys to stay away from the Defendant's house because it was being watched and "maybe fixing to be hit." The evidence did not indicate that the Defendant himself had discovered the police surveillance of his activities such as to create a sufficient exigency.

The fourth circuit in *State v. Kirk*, 00-190 (La.App. 4 Cir. 11/13/02), 833 So.2d 418, *writ denied*, 02-3079 (La. 5/9/03), 843 So.2d 394, found that exigent circumstances did not exist when officers arrested a drug buyer on the same block as the defendant's targeted residence. The court stated:

> However, there is no testimony or other evidence in the record from which we can conclude that the occupants of the apartment were aware of the police surveillance or of the "take down" nearby. There is no evidence that anyone else discovered the police presence who could notify the occupants of the surveillance or "take down." There is no evidence that a crowd was gathering as a result of the police activities. In the absence of a showing that the officers possessed specific and articulable facts, together with the rational inferences from those facts, we cannot find that their belief that exigent circumstances existed to enter the apartment without a warrant was a reasonable one. See *U.S. v. Wilson*, 306 F.3d 231, 238, (5th Cir. (Tex.) 2002).

*Id.* at 420.

Similarly, in *State v. Jones*, 02-1931 (La.App. 4 Cir. 11/6/02), 832 So.2d 382, *writ denied*, 02-2895 (La. 12/4/02), 831 So.2d 973, the fourth circuit found that the arrest of a drug suspect near the defendant's home did not create exigent circumstances. In *Jones*, an undercover officer contacted a drug seller and asked to buy cocaine. The seller told him he had to go get the drugs and police followed him to the defendant's address. After the drugs were sold, the drug seller was arrested about five blocks from the defendant's home. The officers secured the defendant's home and searched it while they waiting on a search warrant.

11

The *Jones* court found that there was no evidence that the drug seller was going to return to the defendant's residence, so that when the officers arrested him nearby they created the exigent circumstances. In addition, the court noted that the officers had already witnessed two drug buys from the same location and had a partially typed search warrant when they decided to secure the residence. The court held that although the officer had probable cause for the warrantless search, they did not have exigent circumstances sufficient to exempt them from the warrant requirement.

It is clear that the United States and the Louisiana Constitution guarantee that a search conducted without a warrant being issued upon probable cause is unreasonable, subject only to a few exceptions. In this case, it is undisputed that the initial entry into the home of the Defendant was done without a warrant. It is also undisputed that the officers were not given permission to enter the home of the Defendant. The detective in charge admitted that his normal procedure was not followed in this case with regard to securing a search warrant.

In reviewing the testimony of the detective it is clear that the officer had ample time to secure a search warrant. His decision to "roll the dice" completely eliminated any judicial oversight.

In reviewing the record, the court must point out that the affidavit that accompanied the warrant does not include important information that the officer obtained prior to securing a warrant.

This court finds that the police did not have specific and reasonable facts and inferences that would justify the warrantless entry. There was no evidence that the Defendant specifically had knowledge of the arrest of the Lachneys or of the police surveillance. Nor was there evidence to suggest that the Defendant would destroy the drugs before a warrant was obtained. In addition, La.Code Crim.P. art 162.1

specifically authorizes the issuance of a search warrant via sworn testimony, communicated to a judge by telephone or radio, which was not attempted by the officers. For these reasons, this court will reverse the trial court's ruling denying the motion to suppress.

## CONCLUSION

The trial court erred in finding that exigent circumstances justified the police officers' warrantless entry into the Defendant's home. The trial court's ruling denying the Defendant's Motion to Suppress is reversed, vacated, and set aside.

**WRIT GRANTED**.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-184

STATE OF LOUISIANA

VERSUS

SHANE EVERET EVANS

**Gremillion, Judge, dissents and assigns reasons.**

I write to respectfully dissent from my colleagues on the majority. Certainly, the entry into Defendant's home was clearly made without consent or a warrant. Therefore, the State had the burden of showing that an exception to the warrant requirement applied in this case. I believe that the State met its burden.

Detective Wood felt exigent circumstances existed when he decided to "roll the dice" and proceed without a search warrant to secure the drug evidence. He testified that he decided to move when he received information from his informant that the Lachney house had been called by someone warning them to stay away from Defendant's house. A review of the facts shows that all of the circumstances that justify exigency, as set forth by *Rubin* in the majority opinion, have been satisfied. Without question, there was a degree of urgency involved in this case. When compared to the amount of time it would have taken to get a warrant (approximately one-and-a-half to two hours),[1] the officers on the scene could have been motivated by urgency. In that regard, because of the nature of the contraband, it was reasonable for the officers to believe that the contraband could be destroyed, removed, or hidden. It goes without saying that those who deal in illegal narcotics would rather dispose of them than face criminal charges for possessing them. The majority finds that there

---

[1] Thirty to forty minutes to type the warrant, fifteen to twenty minutes travel time to the judge's house, the time for the judge to review the warrant, and fifteen to twenty minutes travel time back to Defendant's house.

was no evidence to show that Defendant knew that he was being watched or that Lachney had been apprehended. However, in my opinion, the officers at the scene had ample information to reasonably infer that since Lachney had been tipped off by a caller, Defendant may have likewise had been alerted . Finally, the officers had information that weapons were available to the two suspects in the house possibly putting those watching the house in danger. In fact, the officers put on their protective vests prior to making their raid.

The majority quotes *State v. Atkins*, 02-1963 (La. 7/16/02), 821 So.2d 483, with approval. In my opinion, the State can rely on that case for support. If, as in *Atkins,* police may use as exigent circumstances the fact that neighbors witnessing an arrest may alert a local drug dealer of the authority's presence, it would seem the police in this case could relate exigent circumstances to the fact that since the drug purchaser was notified, the drug seller may also have been notified.

For the foregoing reasons, I would find exigent circumstances existed which would have allowed the officers to enter Defendant's home for the purpose of securing the scene. Therefore, I would deny Defendant's motion to suppress and, accordingly, respectfully dissent from the majority opinion.